UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

LINDA FISHER,

                    Plaintiff,

          -against-

MARIE ANN O'BRIEN, ESQ. and
DAVIS & YOUNG,

                    Defendants.

----------------------------------------------------

**REPORT & RECOMMENDATION**
**09 CV 42 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

          Plaintiff, Linda Fisher, brings this pro se action alleging that defendants, Marie Ann O'

Brien, Esq. and Davis & Young, violated The Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*, and her due process rights under the Fifth and Fourteenth Amendments.

Plaintiff also alleges that defendants violated Ohio State Law when they filed improper liens,

extorted money and caused her emotional distress. Defendants move to dismiss pursuant to Fed.

R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6). The Honorable Carol B. Amon referred defendants'

motion to me for a Report and Recommendation in accordance with 28 U.S.C. §636(b). For the

reasons stated below, it is respectfully recommended that defendants' motion to dismiss for lack

of personal jurisdiction should be granted. However, it is further recommended that plaintiff's

claims under the FDCPA should be transferred to the United States District Court for the

Northern District of Ohio.

## BACKGROUND

This action stems from a dispute between plaintiff and Paul McArdle,[1] a horse trainer, over allegedly unpaid bills. Defendants are McArdle's attorneys and represented McArdle in an action in the Ohio Court of Common Pleas, Portage County. The following is a brief recitation of the relevant underlying facts.

On December 16, 2007, plaintiff was informed by McArdle that he was no longer training horses and that plaintiff should pick up her horse, Golden Trieste, from Carol Klima's Farm in Rootstown, OH. (Compl. ¶¶6, 15.) McArdle had previously trained and rehabilitated many of plaintiff's horses, including Irish Laughter. (Id. ¶¶13, 14.) On January 4, 2008, McArdle emailed invoices to plaintiff for services rendered in 2007 on behalf of Golden Trieste and Irish Laughter. (Id. at 15-22.) Plaintiff, a resident of New York, made arrangements to have Golden Trieste transported to Fox Chase Farm in Garretsville, OH. (Id. ¶¶1, 6, 7.) However, on January 16, 2008, when the horse shippers went to pick up Golden Trieste at Carol Klima's Farm, the horse was not there, so plaintiff contacted the Sherriff's Office, who directed her to contact defendants. (Id. ¶¶7,10.) On January 17, 2008, plaintiff spoke to defendant Marie Ann O'Brien, who identified herself as McArdle's counsel. (Id. ¶¶11, 12.) O'Brien informed plaintiff that Agister's liens had been filed on January 8, 2008 for Irish Laughter and Golden Trieste and faxed copies of the liens to plaintiff. (Id. ¶¶16, 21.)

On January 25, 2008, plaintiff filed a complaint in the Court of Common Pleas, Portage County, Ohio for conversion and breach of contract. (Mot. to Dismiss at Exhibit A.)[2] Plaintiff also moved for a temporary injunction, restraining order and replevin. (Id.) The Court of

---

[1] McArdle is not a party to this action.

[2] All references herein are to defendant's exhibits attached to their Motion to Dismiss unless otherwise specified.

Common Pleas entered a Judgment/Order on February 11, 2008 stating, in relevant part,

> In consideration of releasing Agister's liens for the horses named
> "Golden Trieste" and "Irish Laughter", the amounts of said liens
> totaling sixteen thousand three hundred and five dollars
> ($16,305.00), the plaintiff shall within ninety (90) days, regardless
> of whether or not said horses are sold, either post a bond with the
> Court . . . in an amount double the value of the liens or place . . . in
> escrow. . .and remain there subject to further orders of the Court.

(Exhibit D.) Plaintiff posted the $16,305.00 in escrow and states that she also incurred costs to

find Irish Laughter, which was rightfully McArdle's horse, a new home. (Compl. ¶30.) The

underlying action in Ohio Court of Common Pleas, Portage County was settled on May 27, 2009

for $7,000.00. (Reply at Exhibit A.)

## PROCEDURAL HISTORY

Plaintiff paid the requisite filing fee to commence this pro se action against McArdle's

attorneys on January 6, 2009. Defendants move to dismiss plaintiff's complaint for lack of

subject matter jurisdiction, personal jurisdiction and for plaintiff's failure to state a claim.

Plaintiff opposes the motion.

## DISCUSSION

I.    **Subject Matter Jurisdiction**

A.    **Standard of Review**

Federal courts are courts of limited jurisdiction. District courts have jurisdiction over

cases in which there is a federal question or diversity of citizenship. Perpetual Secs., Inc., v.

Tang, 290 F.3d 132, 136 (2d Cir. 2002). In defending a motion to dismiss for lack of subject

matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a

preponderance of the evidence. Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002). A court should construe all ambiguities and draw all inferences in a plaintiff's favor. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (internal quotations and citations omitted). The Courts also "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (citations omitted). "A court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first," Amidax Trading Group v. S.W.I.F.T. SCRL, 607 F.Supp.2d 500, 503 (S.D.N.Y. 2009) (citing Adamu v. Pfizer, Inc., 399 F.Supp.2d 495, 500 (S.D.N.Y. 2005) (internal quotation omitted), "because dismissal under Rule 12(b)(6), i.e., for failure to state a claim, is an adjudication on the merits with preclusive effect," id. (citing Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n. 6 (2d Cir. 2006)); see also Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (the Court must first decide that it has subject matter jurisdiction before adjudicating any matter in the case). Furthermore, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003).

### B.     Jurisdiction under Diversity of Citizenship

Under 28 U.S.C. §1332(a)(1) "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." While defendants concede that there is diversity of

citizenship, they argue that the Court lacks jurisdiction because the total amount in controversy does not exceed $75,000.00. (Defs. Mem. at 8; docket entry 12.)[3]

Plaintiff has the burden of proving to a "reasonable probability" that her claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (citations omitted.) This burden is "hardly onerous" as there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Id. (citation omitted). To overcome this presumption, defendants must show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (citation omitted). Defendants state that the only amount in controversy is the Agisters' liens, which total $16,305.00. (Defs. Mem. at 8.) While, plaintiff's complaint alleges that she was damaged in the amount of $1,000,000.00, she does not state how she came to this dollar amount. (Compl. at 9.) Plaintiff alleges that she incurred costs in finding Irish Laughter, McArdle's horse, a new home. (Compl. ¶30.) Plaintiff's opposition to defendants' motion also alleges that her damages result from "filing an emergency TRO" and incurring "legal fees, [] costs, travel expense[s], loss of revenue . . .bank fees, loss of work. . ." (Pl.'s Opp. at 8.) However, these conclusory statements fail to establish, within a reasonable probability, that plaintiff meets the amount in controversy requirement. See Riddles v. Sallie Mae, No. 08 Civ. 1499 (NG), 2009 WL 3734302, 3 (E.D.N.Y. November 4, 2009) ("the Court finds that it is not reasonably probable that plaintiff can recover more than $75,000 in this action; plaintiff's complaint offers no rationale for the [$]1,150,000 in damages he claims he is owed, or how the amount is in any way related to his allegations against the defendants."); Smith v. Parsons, No. 09 Civ. 2921 (BMC), 2009 WL 3052631, 2 (E.D.N.Y. September 22, 2009) ("Although plaintiff alleges he sustained various physical injuries and damage to his car

---

[3] The Court refers to the original page numbers listed on the documents, not the ECF page numbers.

consisting of 'several thousand dollars,' these allegations do not provide support for his conclusory statement that 'the amount in controversy well exceeds $75,000.00.'"); Nanya-Amir El v. 2000 New Century Travel Inc., No. 09 Civ. 798 (DLI), 2009 WL 899679, 1 (E.D.N.Y. March 27, 2009) ("plaintiff fails to offer a good faith basis for how he arrived at th[e] amount [raised in his complaint]" and "[b]ased on plaintiff's submissions . . [he] fails to suggest a "reasonable probability" that damages would be in excess of $75,000.")

## C.    Jurisdiction under Federal Question

Federal courts have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. "A case arises under federal law within the meaning of §1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (internal quotation marks and citation omitted). However, "[i]n order to sustain federal jurisdiction, the complaint must allege a claim that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous." Carlson v. Principal Financial Group, 320 F.3d 301, 306 (2d Cir. 2003). "[T]he question of whether a federal statute supplies a basis for subject matter jurisdiction is separate from, and should be answered prior to, the question of whether the plaintiff can state a claim for relief under that statute." Id. Furthermore, if the "asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action" and the Court finds the face of the complaint "seek [s] recovery under federal law or the Constitution," then the court assumes "a sufficient basis for jurisdiction, and reserve[s] further scrutiny for an inquiry on the merits." Id. at 307.

Plaintiff alleges that defendants violated the FDCPA, 15 U.S.C. §1692 (Compl. ¶¶ 32-42), which prohibits deceptive and misleading practices by "debt collectors." Bleich v. Revenue Maximization Group, Inc., 239 F.Supp.2d 262, 264 (E.D.N.Y. 2002) (citing 15 U.S.C. §1692e). Plaintiff states she is a consumer and that defendants were debt collectors who failed to provide her with proper notice and failed to verify the alleged debt. (Compl. ¶¶ 36-40.) Defendants argue that plaintiff is not a consumer, and her "transaction was clearly commercial," not personal. (Defs.' Mem. at 10.) Plaintiff further alleges that defendants violated her right to due process under the Fifth and Fourteenth Amendments, which the Court interprets as claims arising under 42 U.S.C. §1983, a federal statute. (Compl. ¶¶ 64, 65.) Defendants argue that plaintiff "fails to state a claim under §1983." (Defs.' Mem. at 11.)

Plaintiff's complaint, on its face, cites federal law and is not wholly frivolous. Defendants' arguments go to the merits of plaintiff's claims, which is a separate matter from whether this Court has subject matter jurisdiction. "Whether plaintiff is able to assert a valid claim under [a federal statute] is irrelevant to the question of whether the District Court has subject matter jurisdiction over her complaint." Carlson, 320 F.3d at 307.

### D.     Colorado River and Rooker Feldman Doctrines

Defendants also argue that the Court should decline to exercise jurisdiction over plaintiff's action under the Colorado River and Rooker-Feldman doctrines. (Defs.' Mem. at 13,14.) Defendants' argument that the Court should decline to exercise jurisdiction pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), is now moot as there is no parallel state court proceeding pending. (Reply at Exhibit A); See Doyle v. New York State Div. of Housing and Community Renewal, No. 98 Civ. 2161 (JGK), 1999 WL

177441, 5 (S.D.N.Y. 1999) (As there is no parallel state proceeding and jurisdiction is not being exercised simultaneously, the Court has no basis upon which it can refuse to exercise federal jurisdiction in this case) (citing Village of Westfield v. Welch's, 170 F.3d 116, 120 (2d Cir. 1999)).

Similarly, the Rooker-Feldman doctrine is also inapplicable here. The Rooker-Feldman doctrine prohibits the lower federal courts from reviewing final judgments of state courts. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-83 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-16 (1923). Four requirements must be met for Rooker-Feldman to apply: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010) (internal citations and quotations omitted.) Defendants argue that plaintiff's claims against them are for "injuries caused by the state court proceedings and judgments themselves" and that plaintiff "lost" because she had to place "$16,305.00" in escrow. (Defs.' Mem. at 14.) However, at the time plaintiff commenced this action, the state court order directing plaintiff to place the $16,305.00" in escrow was not final but stated it was "subject to further orders of this Court." (Exhibit D.); See Wittich v. Wittich, No. 06 Civ. 1635 (JFB)(WDW), 2006 WL 3437407, 4 (E.D.N.Y. November 29, 2006) (as there was no final court order, this Court does not lack subject matter jurisdiction under Rooker-Feldman.) Furthermore, this Court does not read plaintiff's complaint as challenging the state court order but as challenging defendants' actions, which led to the underlying state court action. The Court therefore finds that Rooker-Feldman does not bar plaintiff's claims. See Morey v. Somers Cent.

School Dist., No. 06 Civ. 1877 (WCC), 2007 WL 867203, 8 (S.D.N.Y. March 21, 2007) ("In the present case, plaintiff does not complain of injury caused by the [underlying] proceeding, but rather his allegations concern his former employer's motivation to initiate disciplinary charges which ultimately led to his termination" and therefore, "the Rooker-Feldman doctrine does not bar plaintiff's federal claim."); Mercado v. Playa Realty Corp.,No. 03 Civ. 3427 (JO), 2005 WL 1594306, 4-5 (E.D.N.Y. July 7, 2005) (plaintiff's claims against defendant "are not an attempt to overturn an adverse state court judgment" and "even assuming [defendant] is correct in its assertion that some of [plaintiff's] allegations against it raise issues that challenge or are inextricably intertwined with those considered by the state court, that fact does not defeat subject matter jurisdiction.")

## II.     Personal Jurisdiction

### A.     Standard of Review

Before reaching the merits of a plaintiff's claims, courts should first address issues relating to personal jurisdiction as a defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings. Blakeman v. The Walt Disney Co., 613 F.Supp.2d 288, 300-301 (E.D.N.Y. 2009) (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) (en banc)). On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam) (citation omitted). "To make this showing, a plaintiff may demonstrate through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited would suffice to establish jurisdiction over the defendant." DirecTV Latin America, LLC v. Park 610, LLC, -- F.Supp.2d.

--, No. 08 Civ. 3987(VM), 2010 WL 305201, 6 (S.D.N.Y. January 26, 2010) (internal brackets, quotation marks, and citations omitted.) Where "a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a *prima facie* showing of personal jurisdiction over the defendant." Porina v. Marward Shipping, 521 F.3d 122, 126 (2d Cir. 2008) (internal quotation marks and citations omitted.) In deciding whether the plaintiff has met this burden, the pleadings and affidavits must be viewed in the light most favorable to plaintiff, with all doubts resolved in plaintiff's favor. DiStefano v. Carozzi N.A., Inc., 286 F.3d 81, 84 (2d Cir. 2001). "However, conclusory allegations are not enough to establish personal jurisdiction." Gmurzynska v. Hutton, 257 F.Supp.2d 621, 625 (S.D.N.Y. 2003) (citation omitted). "In assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in this instance New York.'" Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." Id.

### B.     Jurisdiction Pursuant to CPLR §302(a)(1)

New York Civil Practice Law and Rules ("CPLR") §302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." "A non-domiciliary 'transacts business' under C.P.L.R. 302(a) (1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." DirecTV Latin America, 2010 WL at 7 (citing CutCo

Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). "If the defendant is transacting business in New York, the second half of the section 302(a)(1) inquiry asks whether the cause of action 'aris[es] from' that business transaction or transactions." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 249 (2d Cir. 2007). A "claim aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon or when there is a substantial relationship between the transaction or the claim asserted." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted).

Defendants argue that they did not transact business within New York. (Defs. Mem. at 5.) Defendants represented McArdle in Ohio state court, the liens were perfected in Ohio and the horses that were the subject of plaintiff's and defendants' client's lawsuit were in Ohio. (Id.) Plaintiff argues, however, that defendants have a client located in New York and that they therefore transact business in New York. (Pl.'s Opp. at 8.) Defendants counter that there is no "articulable nexus" between the business they transacted in New York and the "cause of action sued upon" here. (Reply at 2.) The Court agrees. Defendants' actions to obtain the liens against her, which plaintiff alleges violated her constitutional rights and the FDCPA, were taken in Ohio. Their legal representation of McArdle was also limited to Ohio. Plaintiff fails to make a *prima facie* showing that defendants transacted any business in New York related to her suit. Therefore, there is no basis for personal jurisdiction under CPLR §302(a)(1).

## C.      Jurisdiction Pursuant to CPLR §302(a)(2)

CPLR §302(a) (2) provides for long arm jurisdiction where the defendant is alleged to have committed a "tortious act within the state." "New York courts, both state and federal, have

interpreted this section to apply only when the Defendant is physically present in the state when the tort is committed." Ferri v. Berkowitz, -- F.Supp.2d. --, No. 09 Civ. 182 (LDW), 2009 WL 2731339, 8 (E.D.N.Y. August 25, 2009) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789-90 (2d Cir. 1999)). Defendants argue that plaintiff has never alleged that they were in the state of New York. (Defs. Mem. at 6.) Defendants further state that phone calls they made from outside of New York to New York do not qualify as an "act committed within the state." (Id.) "[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." Maranga v. Vira, 386 F.Supp.2d 299, 306 (S.D.N.Y. 2005) (internal citations and quotation marks omitted). "[C]ourts applying New York law have declined to extend jurisdiction over defendants simply on the basis of telephone calls and other communications sent to New York." DirecTV Latin America, 2010 WL 305201 at 9 (listing cases). Plaintiff's complaint does not allege defendants' presence in New York, and while she alleges defendants called her and faxed copies of bills to her, these allegations are insufficient to establish personal jurisdiction under CPLR §302(a)(2). See Id. at 14 ("[t]here is no suggestion that either [defendants] w[ere] ever physically present in New York and thus the statute apparently does not apply at all.)

### D.    Jurisdiction Pursuant to CPLR §302(a)(3)

CPLR §302(a)(3) provides for long arm jurisdiction where the defendant "commits a tortious act without the state causing injury to person or property within the state" if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Under 302(a)(3), each element is "essential," and if plaintiff fails to proffer sufficient evidence for any element, "it is dispositive of the issue" of personal jurisdiction under this provision. Overseas Media, Inc. v. Skvortsov, 407 F.Supp.2d 563, 575 (S.D.N.Y. 2006) (citations omitted).

"To satisfy the first element, the plaintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 106 (2d Cir.2006) (internal quotation marks and citations omitted). Plaintiff argues, among other things, that by concealing her property without a hearing or due diligence, fabricating bills, threatening to auction her property, etc., defendants performed tortious acts outside of New York. (Pl.'s Opp. at 9.) While plaintiff's assertions may state a colorable cause of action, plaintiff fails to demonstrate injury within the state in order to establish jurisdiction under CPLR §302(3).

"[C]ourts determining whether there is injury in New York sufficient to warrant §302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Whitaker, 261 F.3d at 209 (citations omitted). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." Id. Furthermore, "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under §302(a)(3) where the underlying events took place outside New York." Id. Plaintiff alleges that she was injured within New York because she spent "considerable money" to have her property returned and that defendants risked her

"livelihood" and "New York State Racing Licenses and NASD license." (Id.) Defendants argue that plaintiff cannot establish injury within the state. (Defs. Mem. at 7-8.)

Here, the defendants filed liens on plaintiff's horses in Ohio, which resulted in plaintiff filing suit in Ohio. Therefore the situs of the injury is Ohio, not New York. While plaintiff alleges that defendants "risked" her livelihood by their actions, her conclusory allegations do not demonstrate that she was actually injured within the meaning of §302(a)(3). Monetary damages alone are insufficient to establish injury within the state. See Lipin v. Bergquist, 574 F.Supp.2d 423, 432 (S.D.N.Y. 2008) ("The only arguable basis for the existence of injury would be Plaintiff's residence in New York and Plaintiff's subsequent 'experience' of economic and/or emotional injury in this state. However, '[a]n injury [for the purposes of §302(a)(3)] ... does not occur within the state simply because the plaintiff is a resident.'"); Stemcor USA v. Hyundai Merchant Marine Co., Ltd., 386 F.Supp.2d 229, 234 (S.D.N.Y. 2005) ("The only effect of the 'original event' to occur in New York was the economic injury felt by [plaintiff] as a result of the damaged and lost cargo . . .[which] is insufficient to make New York the situs of the injury under Section 302(a)(3)(ii).") Baptichon v. Nevada State Bank, 304 F.Supp.2d 451, 460 (E.D.N.Y. 2004)("there must be a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here.").

With respect to the remaining elements, plaintiff alleges that defendants performed "unlawful", "egregious," "willful, malicious and extortionist acts" which they should have expected to have consequence in New York and because they have clients in New York, they derive "substantial revenue from interstate and international commerce" in New York. (Id. at 9-10.) Plaintiff further states that she is entitled to limited discovery on the jurisdictional issues. (Pl.'s Opp. at 11.) However, as plaintiff has failed to make the requisite showing that she was

injured in New York, an essential element for personal jurisdiction, additional discovery on whether defendants derive substantial revenue from interstate commerce or were aware that their actions would have consequences in New York would not cure the deficiencies in plaintiff's pleading. See Yash Raj Films (USA) Inc. v. Dishant.com LLC, No. 08 Civ. 2715 (ENV)(RML), 2009 WL 4891764, 11 (E.D.N.Y. December 15, 2009) (denying plaintiff's request for jurisdictional discovery as it would not cure the fatal deficiencies in plaintiff's jurisdictional pleading); see also Penguin Group (USA) Inc. v. American Buddha, No. 09 Civ. 528 (GEL), 2009 WL 1069158, 4 (S.D.N.Y. April 21, 2009) (As plaintiff failed to establish injury within the state, an issue that is dispositive, "it is not necessary to explore whether plaintiff has met its burden on the other elements necessary to establish jurisdiction under Rule 302(a)(3)(ii)"). Defendants' motion to dismiss for lack of personal jurisdiction should therefore be granted.

## III.    Venue Transfer

In an abundance of caution and in light of plaintiff's pro se status, the Court may transfer plaintiff's case to the United States District Court for the Northern District of Ohio. "Transfer under 28 U.S.C. §1406(a) is permitted as an alternative to dismissal where a district court finds that it lacks jurisdiction over a defendant." Copterline Oy v. Sikorsky Aircraft Corp. 649 F.Supp.2d 5, 17-18 (E.D.N.Y. 2007) (citing 28 U.S.C. §1406(a); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)). "A court may transfer a case pursuant to 28 U.S.C. §1406(a) *sua sponte* even if the defendant moves only to dismiss." Pisani v. Diener, No. 07 Civ. 5118 (JFB)(ARL), 2009 WL 749893, 8 (E.D.N.Y. March 17, 2009) (internal citations omitted.); Holey Soles Holdings, Ltd. v. Foam Creations, Inc., No. 05 Civ. 6939(MBM), 2006 WL 1147963, 9 (S.D.N.Y. May 1, 2006) (citing Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 372 n. 3 (2d Cir. 1966)); see also Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Massachusetts,

Inc., 42 F.Supp.2d 327, 333 (S.D.N.Y. 1999) (A transfer may be made under 28 U.S.C. §1404(a) or §1406(a) upon motion by either party or by the court *sua sponte.*) (citing Lead Industries Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d 70, 79 n. 17 (2d Cir.1979)). Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice. Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005). However, courts will not "waste judicial resources by transferring a case that is clearly doomed." Id. at 436 (citation omitted). Furthermore, "a court's limited jurisdiction 'to decide whether to transfer or dismiss' a case over which it lacks jurisdiction thus includes 'a power of limited review of the merits.'" Id.

## A.    Limited Review of the Merits

Plaintiff's complaint states a claim under the FDCPA.  The Court reviews plaintiff's complaint under a motion to dismiss standard pursuant to Fed. R. Civ. P. 12(b)(6).  A court, reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," Iqbal, 129 S. Ct. at 1949, or "speculative," Twombly, 550 U.S. at 555, he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556)).  If a plaintiff does not "nudge

[his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 569. Nonetheless, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (other citations omitted).

**B.      Claims under 42 U.S.C. §1983**

Plaintiff alleges that defendants violated her due process rights under the Fifth and Fourteenth Amendments. (Compl. at 9.) Defendants argue that plaintiff has failed to properly plead a procedural or substantive due process claim. (Defs.' Mem. at 11-13.) Section 1983 of Title 42 of the United States Code provides "a method for vindicating federal rights elsewhere conferred," including under the Constitution. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3, (1979)). However, to state a claim under 42 U.S.C. §1983, plaintiff must allege that a person, acting under color of state law, has deprived her of a right, privilege, or immunity guaranteed by the Constitution or Laws of the United States. 42 U.S.C. §1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)(citation omitted). Plaintiff's complaint does not establish that defendants acted under color of state law and defendants' motion to

17

dismiss this portion of plaintiff's complaint should be granted. See Grant v. Hubert, 09 Civ. 1051 (JBW), 2009 WL 764559, 1 (E.D.N.Y. March 20, 2009) ("It is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law")(citing Polk County v. Dodson, 454 U.S. 312, 319 (1981)); Koulkina v. City of New York, 559 F.Supp.2d 300, 319 (S.D.N.Y. 2008) ("a private attorney representing a client in either a civil or criminal action is not a state actor for purposes of §1983."); see also Manbeck v. Micka, 640 F.Supp.2d 351, 378 -379 (S.D.N.Y. 2009) ("[plaintiff's] claims must be dismissed against the Private Defendants for failure to satisfy the 'state-action' element of a claim under Section 1983, which . . 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'")(citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

## C.     Claims under FDCPA

Although plaintiff does not refer to specific sections of the FDCPA, the Court liberally construes her complaint to allege a violation of 15 U.S.C. §1692g(a), which states,

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in

> writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

The term "consumer" means any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a(3). This definition covers business debts if incurred by a sole proprietor. Sluys v. Hand, 831 F.Supp. 321, 323 (S.D.N.Y. 1993). The term "debt collector," as defined in the FDCPA, 15 U.S.C. §1692a(6), encompasses "lawyer[s] who regularly tr[y] to obtain payment of consumer debts through legal proceedings." Goldman v. Cohen, 445 F.3d 152, 155 (2d Cir. 2006) (citing Heintz v. Jenkins, 514 U.S. 291, 294 (1995).

Plaintiff alleges that she was emailed invoices by McArdle on January 4, 2008, (Compl. at 15-22) and that defendants filed liens on Irish Laugher and Golden Trieste on January 8, 2008. (Compl. ¶¶16, 21.) Plaintiff states she was not notified of the liens until January 17, 2008 when she spoke to defendants and was informed that her horses would be sold within ten (10) days unless she satisfied the alleged debts. (Id. ¶¶21, 28.) Plaintiff also alleges that defendants faxed the liens to her. (Id. ¶21.)[4] Plaintiff alleges that defendants failed to provide (i) copies of the alleged bills (ii) the name of the creditor of the alleged bills (iii) any written notice of the alleged debt (iv) copies of the verification of the alleged debt (v) information on how to contest the debt (vi) a valid communication of the debt in violation of 15 U.S.C. §1692. (Id. at 34-42.) Defendants argue that plaintiff is not a "consumer." (Defs.' Mem. at 10.) However, plaintiff

---

[4] The fax from defendants state that "certified mail has been issued to you with deman[d] letters, but thus far they have been unclaimed." (Compl. at Exhibit 1.)

19

states that she is a sole proprietor and, as such, she is considered a consumer under the FDCPA. (Pl.'s Opp. at 5, 6.) Plaintiff also alleges that defendants collect debts on a regular basis. (Compl. ¶33.) Defendants do not address these allegations. Moreover, defendants failed to provide written notice containing statements pursuant to §1692g(a)(3) and (4), and failed to provide plaintiff with a copy of the verification of the debt. Therefore, based on a limited review of the merits of the complaint and construed liberally, plaintiff has stated a claim pursuant to FDCPA, 15 U.S.C. §1692g.

## CONCLUSION

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction should be granted but the Court should transfer plaintiff's claims under the FDCPA to the United States District Court for the Northern District of Ohio.[5]

---

[5] As there is no basis for personal jurisdiction, the Court should not address plaintiff's state law claims alleging the filing of improper liens, conversion, extortion, and emotional distress (Compl.) or defendants' argument that they are immune from liability to third persons as they did not act maliciously (Defs.' Mem. at 16-18).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: March 9, 2010
      Brooklyn, New York